Filed 3/14/16  In re A.O. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re A.O, a Person Coming Under the Juvenile Court Law. | B265276 (Los Angeles County Super. Ct. No. DK09735) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ALBERTO O., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Annabelle Cortez, Judge.  Affirmed in part.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Dawyn R. Harrison, Assistance County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

———————————

D.O. was born prematurely in February 2015 with a positive toxicology screen for methamphetamine. Martha, D.O.'s 16-year-old mother, also tested positive for methamphetamine as well as for marijuana. Alberto O., the children's then-19-year-old presumed father, appeals from the orders declaring D.O. and his one-year-old brother A.O. dependents of the juvenile court and placing them in the care of the Los Angeles County Department of Children and Family Services (Department) for suitable placement.[1] Alberto contends evidence of his casual marijuana use and knowledge Martha had used marijuana was insufficient to sustain the court's jurisdiction finding that he was incapable of providing regular care for the children. He further contends the court erroneously evaluated removal of the children under Welfare and Institutions Code section 361, subdivision (c)(1),[2] rather than section 361.2, which applies to noncustodial parents, and its removal order, in any event, was not supported by substantial evidence.[3] We agree with both aspects of Alberto's challenge to the juvenile court's order removing the children from his custody and vacate that portion of the May 26, 2015 disposition order.

---

[1] Martha has not appealed from the juvenile court's jurisdiction findings and disposition orders.

[2] Statutory references are to this code.

[3] At the six month review hearing (§ 366.21, subd. (e)) on February 16, 2016, after oral argument in this court, the juvenile court issued a home-of-parent (mother) order, returning the children to Martha under the supervision of the Department. We invited counsel to submit briefs addressing questions including whether the order mooted Alberto's argument the children should have been placed with him after their removal from Martha. Alberto's counsel advised the court, in light of the children's return to their mother, Alberto no longer seeks immediate placement of the children in his custody pursuant to section 361.2. Nonetheless, Alberto contends his argument the juvenile court used the wrong statute (§ 361, subd. (c)) to order removal of the children from his custody at the disposition hearing is not moot because that order may have significant consequences in the ongoing dependency proceedings if the court were to subsequently remove the children from Martha's custody. We agree.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Petition*

In March 2015 the Department filed a petition under section 300, subdivision (b) (failure to protect), alleging Martha's historical and current use of methamphetamine and marijuana placed D.O. and A.O. at risk of serious physical harm. With respect to Alberto, the petition alleged he had a history of substance abuse, was a current abuser of marijuana and occasionally had been "under the influence of marijuana" while A.O. had been in his care. It further alleged his substance abuse rendered him incapable of providing regular care for the young children and placed them at risk of serious physical harm.

2. *The Detention Report and Hearing*

In a report prepared for the March 2, 2015 detention hearing the Department stated Martha had admitted using methamphetamine and marijuana a few days prior to giving birth and understood that may have contributed to D.O.'s premature birth. Martha also admitted she had used methamphetamine and marijuana approximately five times during her pregnancy. She contended she did so only when she was alone and outside the family home where she lived with her mother and A.O. except she occasionally came home while she was "coming off her high." Martha reported Alberto smoked marijuana and there had been times when he visited the children while he was "coming off his high."

The maternal grandmother reported she had not known Martha used drugs before the positive toxicology screen; Martha had not acted out of the ordinary or engaged in any "weird" behavior. She also stated Alberto was very involved in A.O.'s life, visiting approximately three times a week, but she did not condone the relationship and did not permit him to spend the night.

In a mid-February 2015 interview Alberto admitted he had been using marijuana recreationally for 18 months, but denied ever having been under the influence in front of A.O. However, he was not willing to submit to a drug test because he was afraid it would be used against him. Alberto stated he had been living with his mother, but they had had a "falling out" so he was staying at a friend's house. He did not believe he could provide

3

adequate care for the children because he was unemployed and preferred they live with the maternal grandmother, who would care for them well. (The Department also observed A.O. appeared very well bonded to the maternal grandmother.) Regarding Martha's drug use, Alberto said he knew she had used marijuana but was shocked to learn she had used methamphetamine. He speculated she may have used methamphetamine on the day of A.O.'s first birthday party, shortly before D.O.'s birth, because she was "behaving slightly out of the ordinary."

Department social workers reported A.O. was clean, developing well and showed no immediate signs of neglect or distress. He had a positive bond with Alberto, and Alberto engaged in appropriate play with him. With respect to D.O., although he had tested positive for methamphetamine, he was born healthy and did not experience any withdrawal symptoms. He was released from the neonatal intensive care unit after one week, instead of two, because he had done so well. Hospital nurses reported Martha and Alberto had interacted appropriately with D.O. and D.O. was bonding with them.

The court detained the children in shelter care. It ordered the Department to investigate placement with the maternal grandmother and to evaluate whether release to Alberto would be appropriate once he was submitting to drug tests and testing clean. Alberto and Martha were granted monitored visitation.

3. *The Jurisdiction and Disposition Report and Hearing*

In a May 26, 2015 report prepared for the jurisdiction and disposition hearings, the Department stated it was working diligently to place the children in the home of the maternal grandmother. Alberto had tested positive for marijuana at a level of four nanograms per milliliter greater than the screen cut-off level in a random drug test on April 2, 2015. He did not show up for a random test on May 1, 2015. In a May 18, 2015 interview with the maternal grandmother, she stated she never suspected Alberto had used drugs. He had "always been responsible and involved with" A.O.

At a contested jurisdiction and disposition hearing the court sustained the section 300 petition, finding, with respect to Alberto, he had tested positive for marijuana once and there was no evidence he had stopped using marijuana, having failed to show up

4

for the second test. The court also found there was a nexus between Alberto's drug use and a risk to his young children, who were completely dependent on their parents for care, based on Martha's statement he had cared for A.O. when he was "coming off his high." The court also noted the Department's reports indicated Alberto knew Martha was using marijuana during her pregnancy.

Alberto asked the juvenile court to place the children with him in his mother's home. He testified he had initially told the Department he could not care for the children because he thought they would be placed together in the home of the maternal grandmother, where A.O. was thriving, and he did not want to disrupt the child's life. He promised the court he would drug test as a condition of having the children in his care and asked to be allowed to attend the drug treatment and educational programs Martha was attending. He explained he had missed the May 1, 2015 drug test because he was having problems with his cell phones. He also contended he never told the Department he knew Martha had smoked marijuana while she was pregnant; he simply meant he had learned she smoked marijuana when they met.

The court found by clear and convincing evidence, pursuant to section 361, subdivision (c), there would be a substantial danger to the children's physical health if they were returned to their parents and there were no reasonable means to protect them without removing them from their parents' custody. The court explained, "If this was just merely a marijuana-only case, where [Alberto] was smoking marijuana and that was the extent of the concerns, then that would be a different scenario than what the court would be faced with. . . . Rather, we have mother using methamphetamine and marijuana when she was pregnant. And then we have information in the report about the father having cared for . . . [A.O.] while he was coming off the high. And there's information in the report that . . . Father reported that he was not aware that mother was using methamphetamine but admitted to knowing about her marijuana use. Father reported that he believes the mother could have used methamphetamine the same day they had a birthday party for [A.O.], few days before giving birth to their second child [D.O.]. When you combine the facts, where the father has been using, there's no evidence that he

5

has stopped. And the fact that mother was using methamphetamine and marijuana during the pregnancy—father previously indicated that he was aware of the marijuana use, and now, to the court, he indicated that he wasn't, which—I'm not crediting what he indicated today. . . . So it's one of two things: Either, one, he knew, and he didn't recognize the risk that mother using marijuana and drugs during the pregnancy would have on the child, while he at the same time was smoking marijuana, or he did not know, and it's still the same concern about the father not recognizing the risk. But I do believe that the initial information that was reported in the reports included in the detention and adjudication is more accurate with respect to his knowledge."

The court ordered family reunification services for Martha and Alberto, including completion of individual counseling to address the effects of drug abuse on young children, and monitored visitation for both parents.

## DISCUSSION

1. *The Juvenile Court Applied the Wrong Statute When It Ordered the Children Removed from Alberto*

Section 361, subdivision (c), governs the removal of a child from the physical custody of a parent or guardian "with whom the child resides at the time the petition was initiated." It provides, in part, a child may not be removed unless the court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child if the child were returned home and "there are no reasonable means by which the [child]'s physical health can be protected without removing" the child from his or her parent's custody. (§ 361, subd. (c)(1).)

Section 361.2, in contrast, is not a removal statute. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1422.) Rather, it requires a child who has been removed from his or her custodial parent to be placed with a parent with whom the child was not residing if that parent requests custody unless the court finds "that placement with that parent would be detrimental to the safety, protection or physical or emotional well-being of the child." (§ 361.2, subd. (a); see *In re Liam L.* (2015) 240 Cal.App.4th 1068, 1073.) A finding of

detriment pursuant to section 361.2, subdivision (a), must be made by clear and convincing evidence. (*In re Abram L.* (2013) 219 Cal.App.4th 452, 461.)[4]

It is undisputed the children were not living with Alberto when the dependency proceedings were initiated. Consequently, the court erred in analyzing whether the children should be placed with him pursuant to section 361, subdivision (c), rather than section 361.2, subdivision (a).

2. *The Removal Order Was Not Supported by Substantial Evidence*

Observing that the substantial danger finding under section 361, subdivision (c), and the detriment finding under section 361.2, subdivision (a), are fundamentally the same—and in each case must be founded upon clear and convincing evidence—the Department argues the juvenile court's error in applying the wrong statute was harmless: It is not reasonably probable, the Department contends, that Alberto would have received a more favorable result absent the error. (See *In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1098-1099 [reversal is justified only when it is reasonably probable a result more favorable to appealing party would have been reached in absence of the error]; see also *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303-304.) The premise of the Department's argument is correct: Substantial evidence to support removal under section 361, subdivision (c), would almost certainly equate to a finding of detriment under section 361.2, subdivision (a).[5] Its application in this case is not: Under either

---

4       We agree with the courts that have held section 361.2 does not require a noncustodial parent to be "nonoffending" to be considered for placement under section 361.2. (See *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 301 [if "sustained jurisdictional allegations disqualified father from obtaining custody under section 361.2's purported 'nonoffending' parent requirement . . ., the heightened clear and convincing standard would disappear, having been supplanted by the lower preponderance standard used to make the earlier jurisdictional findings"]; *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1504-1507; *In re V.F.* (2007) 157 Cal.App.4th 962, 966 ["section 361.2 does not distinguish between an offending and nonoffending parent"].)

5       Although the burden of proof for disposition findings under both section 361, subdivision (c), and section 361.2, subdivision (a), is clear and convincing evidence, we review disposition orders for substantial evidence. (*Sheila S. v. Superior Court* (2000)

statute, the evidence regarding Alberto's conduct and the risk he purportedly poses toward his children is insufficient to justify the decision not to place the children in his care. (See *In re D'Anthony D.* at p. 303 ["we can neither ignore the similarity between these statutes' mandatory findings, nor disregard the evidence supporting the court's 'substantial danger' finding concerning placement with father"].)

"'Substantial evidence' means evidence that is reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1401.) Notwithstanding the considerable deference we give to the juvenile court's findings, and particularly its credibility determinations, in applying this standard, on this record there is not substantial evidence supporting a finding that placing the children with Alberto would be detrimental to their safety, protection or physical or emotional well-being. The detriment standard, "while vaguely worded to be sure, must be construed as a fairly high one. It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member. [¶] We do not get ideal parents in the dependency system. But the fact of the matter is that we do not get ideal parents anywhere." (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789; accord, *In re C.C.* (2009) 172 Cal.App.4th 1481, 1490.)

Risk of harm to a child from a parent's use of drugs is generally examined in the context of the dependency court's jurisdiction. Although we decline to address Alberto's challenge to the court's jurisdiction findings based on his use of marijuana in light of the

---

84 Cal.App.4th 872, 880-881 ["The 'clear and convincing' standard . . . is for the edification and guidance of the trial court and not a standard for appellate review. [Citations.] "'The sufficiency of evidence to establish a given fact, where the law requires proof of fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal."'"]; accord, *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, fn. 4; see *In re I.W.* (2009) 180 Cal.App.4th 1517, 1525-1526.)

unchallenged findings as to Martha's conduct,[6] the principles developed in those cases are nevertheless instructive. Thus, "[i]t is undisputed that a parent's use of marijuana '*without more*' does not bring a minor within the jurisdiction of the dependency court." (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003; see *In re Drake M.* (2012) 211 Cal.App.4th 754, 764 (*Drake M.*) ["jurisdiction based on 'the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse,' must necessarily include a finding that the parent at issue is a substance *abuser*"].) But, when very young children are involved, as in this case, sufficient evidence of marijuana abuse is prima facie evidence of a parent's inability to provide regular care resulting in a substantial risk of harm to the children. (See *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219-1220 [father had been a daily user of marijuana for several years and was in violation of the terms of his parole because he was not drug testing regularly and had tested positive for marijuana; "[w]hether or not [father's] unemployment and repeated scrapes with the law were directly related to his chronic marijuana use, on this record the juvenile court properly found [father's] persistent and illegal use of marijuana demonstrated an inability to provide regular care for infant Brianna"].)

Although there is no "comprehensive, exclusive definition [of substance abuse] mandated by either the Legislature or the Supreme Court," the *Drake M.* court formulated "a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b)." (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1218.) "[A] finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or

---

6　"'[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent. [Citations.]' [ Citation.] 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings . . . .'" (*In re D.M.* (2015) 242 Cal.App.4th 634, 645.)

(2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR. The full definition of 'substance abuse' found in the DSM-IV-TR describes the condition as '[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights).' (DSM-IV-TR, p. 199.)" (*Drake M*., *supra*, 211 Cal.App.4th at p. 766; see also *In re Christopher R.,* at p. 1218, fn. 6 [explaining that the DSM-IV-TR's definition of "substance abuse" has been replaced in the more recent Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), published in May 2013 after the decision in *Drake M*., by a more broadly defined classification of "substance use disorders," which combines substance abuse and dependence].) As we further described in *In re Christopher R*., at page 1218, footnote 6, "DSM-5 identifies 11 relevant criteria, including cravings and urges to use the substance; spending a lot of time getting, using, or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or school because of substance use. The presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use disorder. (American Psychiatric Association, Highlights of Changes from DSM-IV-TR to DSM-5 <http://www. dsm5.org/ Documents/ changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf> [as of Apr. 14, 2014].)"

Here, there was no evidence Alberto was anything more than a moderate user of marijuana who did not satisfy the criteria for "substance abuse" in the DSM-IV-TR or a "substance use disorder" under the DSM-5. He had one drug test with a slightly elevated level of cannabinoids and failed to show for a second test. In contrast, the maternal grandmother, who disapproved of the relationship between Martha and Alberto, nevertheless characterized Alberto as a responsible and involved father and said she had never suspected he used drugs. Additionally, there was no evidence he had used marijuana in physically hazardous situations, had legal, social or interpersonal problems as a result of his use of marijuana or was unable to fulfill major role obligations at work or home. Accordingly, any presumption that substance abuse indicates a parent's inability to provide regular care for very young children is simply inapplicable here. (See, e.g., *In re Christopher R., supra*, 225 Cal.App.4th at pp. 1219-1220.)

If there had been substantial evidence Alberto knew Martha was using drugs during her pregnancy and made no effort to persuade her to stop, that might well be sufficient to justify the court's removal order. But the court's finding to that effect was based solely upon the Department's report that Alberto "admitted to knowing about [Martha's] marijuana use." It did not limit that general statement, nor is there anything in the record from which it can reasonably be inferred Alberto knew Martha was using marijuana during her pregnancy, rather than at some earlier time, as Alberto explained during the disposition hearing. To be sure, the court found it equally troubling that Alberto might not have known Martha was using drugs during her pregnancy; but, given Martha admitted only to limited drug use and Alberto did not live with her and only visited the home several times a week, his apparent lack of knowledge in these circumstances is insufficient, without more, for a finding of detriment (or substantial danger). Indeed, even Martha's mother, with whom she lived, did not suspect Martha was using drugs during her pregnancy. Although "[w]e understand and share in the overriding concern with the welfare of children who are dependents of the juvenile court[,] . . . our dependency system is premised on the notion that keeping children with their parents while proceedings are pending, whenever safely possible, serves not only to

11

protect parents' rights but also children's and society's best interests." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 530; see *In re Hailey T.* (2012) 212 Cal.App.4th 139, 146 ["[r]emoval 'is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent'"].)

Similarly, the court's concern there was "information in the report about the father having cared for . . . [A.O.] while he was coming off the high" did not warrant denying placement with Alberto. While Martha reported Alberto had done so, her contention was simply too vague to justify such a drastic consequence, especially in light of the maternal grandmother's favorable observations about Alberto's parenting. (See *Drake M.*, *supra*, 211 Cal.App.4th at p. 767 ["Despite [the Department's] allegations, there was no evidence in the record that father was under the influence of marijuana while driving his vehicle. There was no evidence showing that father was still under the influence of marijuana when he picked up Drake from daycare and cared for him alone, nor was there evidence showing that a person remains under the influence of marijuana four hours after smoking it from which it could be inferred that father was still under the influence."].)

Drug abuse is a significant problem, and courts properly err on the side of caution when there is evidence of it. (See § 300.2 ["[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child"].) However, the use of marijuana, now legal in three states for recreational purposes and more than a dozen for medicinal use, is becoming increasingly common; and possession of small amounts (less than 28.5 grams) without a medical marijuana card is only an infraction punishable by a fine of not more than $100. (Health & Saf. Code, § 11357, subd. (b).) Without any showing a parent's on-going use of marijuana has affected his or her ability to manage a household or care for a child or some other evidence that use of the substance has created an actual risk of harm to the child, a decision not to place or leave a child in the parent's care is unjustified. (See *In re David M.* (2005) 134 Cal.App.4th 822, 830 [jurisdiction finding reversed where no evidence of a specific, defined risk of harm from mother's substance abuse problem]; see also *In re Destiny S., supra*, 210 Cal.App.4th at p. 1003

12

[same].)  On this record, the legislative mandate for placement with the noncustodial father should have been honored.

## DISPOSITION

That portion of the May 26, 2015 disposition order removing D.O. and A.O. from Alberto's custody pursuant to section 361, subdivision (c)(1), is vacated.  In light of the February 16, 2016 home-of-parent (mother) order returning the children to Martha under the supervision of the Department (see footnote 3) and Alberto's assertion he no longer seeks immediate placement of the children, the matter is remanded for the juvenile court to consider disposition under section 361.2 in the event of any future detention or removal of the children from Martha.  In all other respects the disposition order of May 26, 2015 is affirmed.


PERLUSS, P. J.


We concur:



ZELON, J.



SEGAL, J.